1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,                     CASE NO. 07cr2016-IEG

12                                    Plaintiff,    Order Denying Defendant Koch and
                                                    Bragansa's Motions in Limine to
13              vs.                                 Preclude Evidence Concerning
                                                    Approval of Drug Orders by Non-
14   DOLORES LOVIN (5); MARY                        Physicians [Doc. Nos. 481 and 484]
     ARONSON (6); RICHARD EDWARD
15   KOCH (11); PHILIP JAMES BIDWELL
     (12); JEFFREY A. LIGHT (14); TRACY
16   O'NEAL TYLER (15); PETER P.
     BRAGANSA (16),
17
                                    Defendant.
18

19          Presently before the Court are the motions in limine of defendant Koch and defendant

20   Bragansa to preclude evidence concerning approval of drug orders by non-physicians.[1]  Following

21   oral argument on the motion, the Court ordered the government to provide supplemental briefing

22   regarding the admissibility and relevance of this evidence.  The government has filed its

23   supplemental response, and defendant Koch has filed a supplemental reply.  Upon consideration of

24   all the arguments, for the reasons explained below, the Court DENIES defendants' motions to

25   preclude this evidence.

26   ///

27

28   _____

          [1]  The Court has deemed that all defendants join in the motion.

### *Background*

William Harrington and Todd Wurtzel (aka Sonny Gallo) recruited physicians into the Affpower organization.  Every time a doctor reviewed a medical questionnaire, he or she received a fee from Affpower.  Harrington and Wurtzel received a commission every time a doctor they recruited into Affpower reviewed a prescription.  The government intends to introduce evidence at trial that Wurtzel approved between 300,000 and 400,000 customer orders himself by logging into the Affpower system as one of the doctors he recruited, accessing the customer orders, and approving them under the names of those doctors.  Wurtzel, in fact, allegedly approved more than half of the prescriptions which form the basis of the counts of the Superseding Indictment.  Defendants Koch and Braganza move to exclude evidence that Wurtzel misappropriated the identities of the physicians in order to issue the prescriptions.  Defendants argue the evidence is overly prejudicial and not relevant to any element of the offenses charged. Defendant Koch also argues the government failed to give defendants proper notice of its evidence or theory.

### *Discussion*

As an initial matter, the Court finds the government provided defendants ample notice with regard to the evidence of Wurtzel's misappropriation and its relevance to the crimes charged in the Superseding Indictment.  The original Indictment in this case, in summarizing Affpower's order approval process, alleged that "[i]n some cases, a member of the Affpower enterprise who was not a medical doctor misappropriated the identity of a licensed physician, and approved customer orders and issued prescriptions using that physician's name and registration."  Furthermore, in June of 2008 the government produced Wurtzel's plea agreement, which included the following statement in the factual proffer:

> In addition, defendant approved between 300,000 and 400,000 customer orders himself by logging into the Affpower system as either Dr. Elizabeth Concepcion, Dr. Robert Sawicki, Dr. Robert Sqitiashvilli, or Dr. Lous Tsarouhas, accessing the customer orders and approving them under the names of those doctors. In these instances, there was no physician involvement in the Affpower approval and sale of prescription pharmaceuticals....

Finally, the Superseding Indictment alleges that "[i]n approximately one-half of all of Affpower's prescription pharmaceutical orders, a member of the Affpower enterprise who was not a medical doctor misappropriated the identity of a licensed physician, approved customer orders, and issued

1    'prescriptions' using that physician's name and registration."  The government provided ample

2    notice of this theory and evidence in support.

3           The Court also finds that the evidence of Wurtzel's misappropriation of the identity of

4    physicians to approve "prescriptions" is directly relevant to the charges alleged in the indictment.

5    Evidence of Wurtzel's approval of more than half of the prescriptions involved in the Superseding

6    Indictment, without any involvement by a physician, is highly relevant to three questions: whether

7    the "prescriptions" issued by Affpower in connection with its sales of prescription drugs were

8    valid, whether defendants committed fraud in their representations to customers about Affpower's

9    business, and whether the drugs were distributed without a valid prescription.

10          In order to prove its charge of distribution and conspiracy to distribute controlled

11   substances in violation of 21 U.S.C. § 841 and 846, the government must demonstrate that the

12   pharmacist defendants, as well as the affiliate defendants as aiders and abetters, dispensed

13   controlled substances without a valid prescription.  The government must demonstrate that the

14   prescriptions which were "issued" by Affpower physicians were not for a legitimate medical

15   purpose and were outside the usual course of a professional practice.  Evidence of Wurtzel's

16   misappropriation of the physicians' identities, and approval of "prescriptions" with no physician

17   involvement, is certainly evidence that controlled substances were issued without a valid

18   prescription.

19          Similarly, in order to prove its charge of wire fraud, the government must demonstrate that

20   the Affpower scheme was "reasonably calculated to deceive."  United States v. Woods, 335 F3d

21   993, 1000 n.4 (9th Cir. 2003).  The affiliate defendants made numerous representations on their

22   websites concerning the nature of Affpower's physician review process, including that the

23   submitted medical questionnaires would be thoroughly reviewed by U.S. licensed physicians.

24   Evidence that Wurtzel was issuing prescriptions in the name of physicians who had no part in the

25   process tends to demonstrate the falsity of the affiliates' representations on their websites.

26          Finally, in order to prove its charge under the Food, Drug, and Cosmetic Act ("FDCA"),

27   the government must demonstrate that the defendants knowingly dispensed, or aided and abetted

28   the dispensing of, a prescription drug without a valid prescription.  The government must

demonstrate the prescription was not issued by a "practitioner licensed by law to administer such drug." 21 U.S.C. § 353(b)(1)(B). Again, evidence regarding Wurtzel's actions is directly relevant to the government's burden of proof on this charge.

Defendants argue the evidence of Wurtzel's misappropriation of physician identities is irrelevant because there is no evidence any defendant knew of Wurtzel's actions. Defendants further argue Wurtzel's actions were not "reasonably foreseeable overt acts" for which they may be held responsible as co-conspirators. As the government points out in its supplemental briefing, admission of evidence regarding Wurtzel's misappropriation does not in any way relieve the government of the burden of demonstrating each defendant had the requisite guilty knowledge required by the charging statutes. The government is not required, however, to demonstrate the defendants specifically knew of Wurtzel's actions.

The government intends to show at trial that defendants knew the Affpower organization was approving thousands of orders per day at the rate of about 98%, with only a handful of supposed physicians. Based upon these facts, the jury could infer that defendants either knew or were recklessly indifferent to whether the prescriptions were being issued in the usual course of professional practice or for a legitimate medical purpose. The jury could also infer that defendants knew the prescriptions were not being issued by a practitioner licensed by law to administer such drug and that their representations about the quality of physician review were false.

Given the patent relevance of this evidence to the charges in the Superseding Indictment, the Court cannot say that it is more prejudicial than probative under Fed. R. Evid. 403. Defendants are free to argue at trial that they had no knowledge of Wurtzel's actions and no reason to know or suspect that the numerous prescriptions were being "issued" without physician review.

///
///
///
///
///
///

07cr2016

*Conclusion*

For the reasons set forth herein, the Court DENIES defendant Koch and defendant Bragansa's motions in limine to preclude evidence regarding approval of drug orders by non-physicians.

**IT IS SO ORDERED**.


**DATED:  March 18, 2009**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

07cr2016